The next case number 22-1918, United States v. Alejandro Cortes-Lopez. At this time, would counsel for the appellant introduce himself on the record to begin. Good morning. May it please the court. I am Alejandro Cortes-Lopez and I represent the appellant, Alejandro Cortes-Lopez. May it please reserve two minutes for rebuttal.  Mr. Cortes, when he pled guilty, he sacrificed his constitutional rights for a promise made by the United States that he would stand with him in a united front at the time of sentencing to recommend a sentence of probation. Not only did the agreement recommend a sentence of probation, it further set the offense level at 18 and contemplated no other enhancements. However, at the time that sentencing arrived, the united front collapsed. There even was a united front. And we see two breaching acts in this record. The first one being the prosecutorial endorsement of a higher offense level than the parties had contemplated. And secondly, the government attorney's, not inability, but rather not supplying the court with its reasons and thereby withholding a material recommendation for a sentence. Well, the government objected to the PSR, is that correct? Yes, that's correct. Yes, your honor. And so what the government did was to say we agree that the probation correctly calculated the PSR. Well, that is part of what the government did. I'll attempt to take that piece. I'm sorry. Let's just take that piece. I know we have a different argument on something else, but on that particular piece, the government said that it agreed with the calculation, with the enhancements, is that correct? Yes, your honor. So is it the defendant's position that the government should have just stood silent when there was a contest over the enhancements? I'm just trying to figure out what you think. The government, given the dual role of the government, what do you think in that particular moment the government should have done? Well, I think that one thing that sets this case apart from a lot of the cases that we see in the case law is the fact that there was no judicial inquiry made to this government attorney. It was simply, so this wasn't a preliminary statement either. The government attorney at the sentencing simply uttered, simply wanted to remind the court that there were pending objections that hadn't been ruled upon. It could have simply done that and stopped right there. Instead, what we see is the prosecutor making this statement that it agrees with probation's calculations, and the effect is practically devastating. And this is despite the fact that the recommendation for a sentence of probation was done regardless of criminal history category, regardless of the defense level. But it still does damage to the plea in that. So if the prosecutor had simply said there are pending objections, and the court then said, well, what is the government's position on the correctness of the enhancement calculations, you would not be here arguing that that would be a breach? I think it would depend on what transpired right after. I do believe that if it had, if there was still no substantive recommendation for the 3-2 sentence of probation, then there's still an issue of breach there. Counsel, would it be acceptable for the government in your view to respond to the probation position by saying, we agree, we have no disagreement with probation officers' factual statements? Would that be permissible? I think it would be a different case, but again, I— It is a different case. That's why I'm asking. Yes, but I do think it's missing a second component, which is explaining the reasons for this sentence of— Agreed, but to respond to Judge Thomson's question, if I understand you correctly, what you're saying is the government could address facts and could also say, and Judge, here's why we stand by our recommendation of probation, regardless of what you do with this guideline, right? Yes, Your Honor, and I do believe that referring to the facts of the case, it was imperative here that the government provide some context, because merely telling the court that this offense level is four levels higher than the parties had contemplated is— This is on loss amount, right? Yes, Your Honor, it's linked to loss amount, and that's the point that I wanted to get to. And so what the government is doing is it's turning its back on the representations at the government's version of facts, which stipulated to a loss amount of $749,000 give or take, and then endorsing this higher offense level that says, no, no, no, it wasn't just about three-quarters of a million dollars, it's really upwards of $5 million. Well, the government's brief says that probation asked the government about the loss amount, and that the government responded appropriately, it says, by giving the correct amount of loss it was effectuated. So you're saying that they answered a question asked of them? So I'm not privy to any communications between the government and the PSR writer, but again, this is where the context comes in. Because loss amount, it isn't a very specific or particular enhancement. This isn't whether there's one gun, two guns, seven guns, and then the offense level goes up. It's a very amorphous standard for determining a loss amount, and so I think that when you have a custom plea, as we do here, and we have the government say, no, no, your group of lawyers— But isn't that amorphous? I mean, there's a way to reasonably calculate what the loss amount is. So then if probation has to do it, what do you think is amorphous or not? And the reason I use amorphous, Your Honor, is there's different considerations. If you look at the PSR in this case, it does appear that some of the victim statements, that there may have been some incomplete submissions. I know that there were upwards of 200 victims in this case, but only about 60 or so submitted these victim statements and forms. And so for that reason, and that takes me to my second point, I believe, it was imperative that the government explain its view of the case to the court. Counsel, one of the things we may all be asking is, is your argument that—does your argument depend on both parts? So both that the government says to the court that it agrees with the loss enhancement calculation by probation, and then that it doesn't explain the reason why it recommended a probation sentence nevertheless? If you didn't have both things, so if they had said they agreed with the loss calculations and then went on and said, but the reason we have stipulated $750,000 in the plea agreement, we think that's correct based on the sentence, the factors is X, would you still be here? I do think that we're raising too discrete a breach claim. So yes, even though they synergize, and we are raising each one independently. Can I ask you a couple more questions? I hope they're quick. One, is there any basis—you're complaining at least a little bit about the government's treatment of the victims who testified in the sentencing. Because I understand the law, they are entitled to do so, and everyone has an obligation to help them do so. Do you agree with that? Certainly, Your Honor. I assume there can't be a problem with the government simply providing information to the probation office, whether requested or not? In general, yes, Your Honor. And then on this critical point about a failure of advocacy, did you want to address this court's Brown decision—sorry, particularly if we're here on plain error of view. Part of my problem is just how plain is the error when you've got first-circuit case law saying the government is not necessarily required to offer ruffles and flourishes with its recommendation. It doesn't have to be particularly enthusiastic about it. So if I could just start with that point. I believe that case involved a—if it wasn't a joint sentencing recommendation in that case, it may have been a split recommendation. And so when you look at the language that Your Honor just quoted, I believe it comes immediately after saying the defense could seek a low end and the government could seek a high end, and so the government wasn't required to pull any punches. But that situation is different. Not pulling punches, no, but the question is whether there's an obligation to advocate when there's an implied obligation to advocate. Yes, I do think so, Your Honor, and we see that in this court's case law that said that the government cannot provide near-lip service. It has to do with— That's why I'm asking you to please address Lessard. Right, so Lessard, if I'm remembering correctly, is the case where the government asked for a big sentence, I believe were the words that were used there. And so context clarified that it wasn't trying to breach. It was simply trying to keep the court from going below the guideline range based on arguments made by the defense. And then Brown, like I said, is a split recommendation. Thank you, counsel. At this time, counsel for the United States can please introduce themselves to begin. Thank you, Your Honor. May it please the court, Maria Doctor for the government. The court should affirm Mr. Cortes' sentence if he has failed to show a plain error review or otherwise that the prosecutor breached the DAP in this case. First, as I said, the proper review here is a plain error. And Mr. Cortes has failed to show that the prosecutor's performance was preliminary statements at the sentencing hearing. And context matters here. Here, there were pending formal objections before the district court. The PSRK brought up a different guideline calculation than the parties in the three-department plea agreement. And then Mr. Cortes objected to these calculations, and the probation officer responded. And Mr. Cortes himself at the sentencing hearing did not flag these pending formal objections. So the government stated, before we make our argument, I would like to flag to the court that there are pending formal objections, and that the probation officer had responded, and the government believes that the probation officer's assessment of those enhancements is correct. How is that consistent with the plea agreement to use offense level 18? The government had a duty to resolve this pending formal objection before the district court, and the government... I'm sorry. I appreciate the prosecutor brought the question to the court's higher guideline calculation. It is difficult for me to swear before you. The government never advocated for the higher guideline calculation here. It endorsed the probation officer's conclusion, correct? The government merely noted that the facts supported the probation officer's calculation, because... That sounds like an endorsement of the enhancements. If I were the district judge and the government said, we agree that the facts support this enhancement, that sure sounds to me like the government wanted things to be enhanced. As opposed to taking just a neutral stance. The government was responding to the formal objections that the probation officer's view of the case, and they notified that the facts supported what the probation officer had calculated, contrary to any indication made by Mr. Cortes in his objection. And this court states those supporting an enhancement entails an element of advocacy, and there was no such advocacy in this case, and that was stated in Arnold Munoz in this case. This is what the prosecutor said. The United States believes the U.S. probation office is correct in their assessment of those enhancements. That certainly seems like an endorsement to me. The prosecutor here noted that the facts supported what the probation officer had calculated, in contravention to any indication by Mr. Cortes, by objecting to those enhancements. And I would point this court to United States v. Gall, where a substantially similar statement was made by the prosecutor, and thereafter, right away, in the spirit of the plea agreement, telling the court that, in U.S. v. Gall, telling the court that the government stooped by the plea agreement, and then recommended the sentence as the parties had agreed upon the plea agreement. And that is precisely what happened in this case. The government noted and believed that the facts were correct as per probation officer's recognition, but then unequivocally went on to state that it was recommending a 24-month probationary sentence, which is what the tolerance obligation was under the terms of the plea agreement. The counsel, you're asking us to look at the context, and that's really what I'm concerned about here, because the government actually agreed to a substantial downward variance here, just probation, no prison time at all. And it stands up and unprompted says, and that was driven largely by the loss calculation in the plea agreement, says the government has looked at the sentencing factors, decided $750,000 or $749,000 is the correct loss amount. But then in the sentencing hearing, the first thing it says is probation's assessment of the enhancements is correct. And then it doesn't say anything about why the $750,000 was actually the appropriate loss amount for the purposes of the sentencing factors. So that's the context that concerns me. Given that statement, why wasn't the government in this particular situation obligated to at least explain why it was advocating for a much lower loss count? Again, on the discourse case law in Lester, there was no duty of advocacy or on a spectrum between standing back and lip service. This feels closer, given the context, to the lip service piece of our jurisprudence than standing back. I would respectively disagree, Your Honor, and I would make a comparison between the United States v. Gall and the United States v. Canada. For example, this court in Canada found lip service where the government never had rights of cooperation as was required under the plea agreement terms and then undermined the plea agreement by urging lengthy periods of incarceration and to send a strong message. And in contravention, in the U.S. v. Gall, the government made substantially similar statements to the case at hand here and the court found no breach. At the court found that the government was dealing with the dual obligation of the adherence to the terms of the plea agreement and then the duty to provide relevant information to the sentencing board. And to more address your question with regard to the government's statements, again, the government had no duty to provide any advocacy or explanation. That is just an astonishing thought to me, frankly, in context here. I'm curious as to why the government agreed to this plea deal originally. This is astonishing to me. But even under stipulated guidelines, the guidelines call for prison time, at least a couple of years, right? Right. The government's coming in and says we recommend probation. Why? Is that better? Why should the district judge accept that recommendation? Are you entitled to just stay silent? That's not even lip service. I would respectfully disagree with the lip service point and I would like to. On that point, could you address the Eighth Circuit's opinion in U.S. v. Brown, which was cited repeatedly in the defense brief and which you did not cite? It seems to be squarely on point on the balance. I am not familiar with that decision, Your Honor. It was discussed extensively in the opening briefing. I apologize, Your Honor. It is out of circuit, so it's not binding on the circuit. Of course it's not binding. But at the risk of being flipped, we owe other circuits at least as much respect as we owe the government's brief. Again, respectfully, I don't know the specific factors, but I would like to make a point. Counsel, just to go back, you agree, of course, that the totality of the circumstances is the test that we use to evaluate if there's a breach. Correct, Your Honor. So, again, just to ask it more pointedly, you put in a plea agreement that asks for probation and is driven by the loss amount, and you say the loss amount is appropriately under the sentencing factor, so $150,000. Then the first thing the government says at the sentencing hearing is actually the correct loss amount is much higher than that. Nevertheless, we stand by the agreement. It sits down. As Judge Thompson said, looking at the totality of the circumstances, how is that non-lip service? Again, the best is looking at the totality of the circumstances and whether the prosecutor's overall conduct was reasonably consistent in making the promise recommendation rather than the reverse. Here, we have to look at the… No, because the prosecutor's… The recommendation is based on the loss amount, and the prosecutor starts off by saying the loss amount is actually much higher. So, how is that consistent? The prosecutor simply clarified to the court that the facts of the probation officer use were correct because Mr. Cortez inferenced that he was not, that his facts did not support the probation officer's calculation. But then the government went on to state that he was standing by the plea agreement, and it referenced that loss amount specifically when making the statement that was in line with both what Mr. Cortez agreed that the location amount would be as well as what the calculation was in the plea agreement, and then unequivocally recommended a 24-month sentence. And I would like to also point out that the defendant was in a best position to provide the mitigating factors here, and he did. He specifically stated why the parties had agreed to recommend that sentence, and that's on page 46 of the appendix. But we're supposed to look at the prosecutor's conduct at the council. Also, the prosecutor's statements depend on what the other party has stated. The prosecutor never disagreed with what Mr. Cortez provided on the record. Frankly, I'm astonished to hear this argument. The weight of arguments in mitigation is so different depending on whether they're coming from the defense or the government. Don't you agree? And the most of it is the government behind that recommendation. Indeed, the district court took that recommendation of the parties into account and issued a downrightly valiant sentence, even lower than what their behavior had recognized as the total of $10,000 to be specifically stated that he was making that determination based on the fact that Mr. Cortez had a lesser probability than his school department. And that was specifically what was discussed on the record at the sentencing hearing on page 46 of the appendix. You don't see a difference in likely weight of mitigation arguments depending on which side is making them? There may be, Your Honor, but it's difficult. Thank you, counsel. Thank you. At this time, if counsel for the appellant will please reintroduce himself on the record. He has a two-minute rebuttal. May it please the court, Andy Pantovides, appearing for the appellant. I'd just like to make a few quick points in rebuttal. Starting with the government's assertions that this mitigating information was submitted by the defense, I think it's no secret that in a federal criminal justice system, the recommendations of the government carry more weight, especially when describing what shaped their view of the case, the strength of the case, the strength of the government's evidence. And so I don't think that defense counsel could have really fixed anything here. I just want to go back and secondly, talk a little bit about the case that the government cited. This case is nothing like the 2016 decision from this court. Later in the trial, yes, it's true that the AUSA said that probation's calculations were correct. However, immediately after, and this is at pages 73 and 74 of the decision, the AUSA recommended a sentence I believe it was for 87 months, and that was consistent with the party's plea agreement that pegs it to a total penalty on the criminal history category. I'm sorry it was decided in plain error, as was I know in this case, which I read to mean that those cases are not binding in this court. And I want to go back to Judge Hamilton's question about Brown. Was your honor referring to the 2022 decision of this court or the Fourth Circuit decision? It's the Eighth Circuit. I was asking the government about the Eighth Circuit. I'm asking you about the First Circuit decision. I just want to make clear on this. And then finally, this was a plea agreement that contemplated a downward variance even before the guideline sentencing range swelled to nearly triple, and so the government, this came as no surprise to the government that the sentence was a downward variance. I believe the original range was for 27 to 33 months, and so there must have been when negotiating this contract, some understanding that the government wouldn't provide the court the raw materials to reach that goal. Thank you, counsel. That concludes the argument in this case.